UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH ANDERSON and REGINA BROWN, Individually and As Representatives of the Estate of KENDRICK DESHUN BAINES, Deceased, | ) ) ) ) ) ) | CIVIL ACTION NO. 3:05-CV-1248-G |
| Plaintiffs, | ) ) | **ECF** |
| VS. | ) ) | |
| DALLAS COUNTY, TEXAS, | ) ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the motion of the defendant, Dallas County, Texas ("the defendant" or "Dallas County"), for summary judgment and the defendant's objections to the plaintiffs' summary judgment evidence.  For the reasons set forth below, the defendant's objections are sustained in part and overruled in part and its motion for summary judgment is granted.

I.  BACKGROUND

The plaintiffs in this action, Kenneth Anderson ("Anderson") and Regina Brown ("Brown") (collectively, "the plaintiffs"), are the parents of Kendrick DeShun Baines ("Baines").  They filed this action on behalf of themselves and the estate of Baines, their deceased son.

Baines committed suicide on July 24, 2003, while incarcerated in the Dallas County Jail.  *See* Plaintiffs' Original Complaint ("Complaint") at 7.  The day before his death, a detention service officer ("DSO") heard Baines threaten to kill himself unless he was allowed to see his mother.  *See* Defendant Dallas County's Motion for Summary Judgment ("Defendant's Motion") at 4.  In response to this threat, Baines was taken to the nurse's station where he was examined by Nurse Hill.  *Id.*  Baines was placed on suicide watch from the time he saw Nurse Hill until approximately 6:00 p.m. that evening.  *Id.*  At that time, Baines was transferred to the west tower of the Lew Sterrett Justice Center.  *Id.*  When Baines was transferred, his paperwork did not include a medical authorization for suicide precautions.  *Id.* at 5.

Around 11:00 a.m. the following morning, DSO Terry realized that Baines did not have a mattress or bedroll.  *Id.* at 7.  This indicated to Terry that Baines might be suicidal.  *Id.*  Accordingly, Terry notified DSO Strange, who checked Baines's buffcard.  *Id.*  Baines's threat to commit suicide was recorded on his buffcard.  *Id.*  Thus, the DSOs on duty knew that Baines had threatened to commit suicide

approximately three hours before his death.  *See* Plaintiffs' Response to Defendant

Dallas County's Motion for Summary Judgment ("Plaintiffs' Response")[1] at 25-26.

Upon learning that Baines was suicidal, DSO Strange asked Catherine Judd ("Judd"),

a physician's assistant, to see Baines.  *Id.* at 27.

At about 1:10 p.m., Judd went to the third floor control center, and DSO

Strange asked if she was ready to see Baines.  *See* Defendant's Motion at 7.  She

responded that she had a list of other inmates who she and the other physician's

assistant, Cotten, wanted to see first.  *Id.*; Plaintiffs' Response at 28.  Terry checked

on Baines multiple times while Judd was seeing other prisoners.  Plaintiffs' Response

---

[1]      This court's local rules contain requirements for the filing of a motion
for summary judgment, a response thereto, and briefs in support of and in opposition
to the motion.  *See* Local Rules 56.3, 56.4 and 56.5.  The plaintiffs in this action have
filed a fifty page "response" to the motion for summary judgment and a nineteen
page brief in support of that response.  *See* Plaintiffs' Response; Brief in Support of
Plaintiffs' Response to Dallas County's Motion for Summary Judgment.  In so doing,
the plaintiffs have apparently misinterpreted -- whether by design or not is unclear --
Local Rule 56.4, which allows a party to set out the legal and factual grounds for an
opposition to a summary judgment motion in the party's response.  However, the rule
also admonishes, "A response to a motion for summary judgment *must not* contain
argument and authorities."  Local Rule 56.4(c) (emphasis added).  The plaintiffs, who
cite extensively to their appendix throughout their response in support of their factual
arguments, apparently ignored the rule's prohibition regarding citation of authorities
or assumed the prohibition was limited to citation of legal authorities.  However,
Local Rule 56.5(c) makes it clear that factual authorities, like legal authorities, should
be cited in a party's brief rather than its response.  *See* Local Rule 56.5(c) ("A party
whose motion or response is accompanied by an appendix must include *in its brief*
citations to each page of the appendix that supports each assertion that the party
makes concerning the summary judgment evidence.") (emphasis added).  Although
tempted to strike the plaintiffs' response in its entirety for their blatant failure to
comply with these local rules, the court -- in an effort to efficiently manage its docket
-- has decided to overlook the violation and consider the response.

at 27.  After Judd finished visiting other prisoners, at about 2:00 p.m., she returned to the control room where the DSOs were eating pizza.  *Id.*  Around the same time, DSO Chatman from the third watch was coming on duty.  Defendant's Motion at 8.

At 2:10 p.m., Officer Chatman escorted Judd to see Baines.  *Id.*  Upon arriving at Baines's cell, Judd observed blood and said she could not tell if Baines was breathing.  *Id.*  Baines was lying face down in his cell, with his jail issued jumper tied around his neck.  *Id.*

Officer Chatman radioed for medical assistance.  *Id.*  Dr. Neller and medical nurses responded to the call and went to Baines's cell.  *Id.*  An ambulance was also called, and Baines was taken to Parkland Hospital.  *Id.*  At 3:11 p.m., Baines was pronounced dead.  *Id.*  The next day, on July 25, 2003, the Dallas County medical examiner performed an autopsy on Baines.  *Id.*  He determined the cause of death to be self-inflicted ligature strangulation.  *Id.*

The plaintiffs seek damages from Dallas County on three grounds: (1) improper denial of medical treatment in violation of 42 U.S.C. § 1983 and the United States Constitution; (2) violation of 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), and 29 U.S.C. § 794, the Rehabilitation Act ("RA"); and (3) violation of the Texas Tort Claims Act ("TTCA"), TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.021.  *See* Complaint at 8-12.  The defendant has moved for summary judgment on each of these claims and also on the ground that the plaintiffs

lack standing to bring this action on behalf of their son's estate.  *See generally*, Defendant Dallas County's Brief in Support of Motion for Summary Judgment ("Defendant's Brief").

## II. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. *See Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovants cannot survive a motion for summary judgment, however, by merely resting on the allegations in their pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities*,

*Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).; see also *Celotex*, 477 U.S. at 324.

B. <u>Summary Judgment Evidence</u>

1. *Evidentiary Standard on Motion for Summary Judgment*

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c).  See *Celotex*, 477 U.S. at 324.  While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements.  See *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit were "incompetent summary judgment evidence").  Thus, for example, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court.  See *id.*

2. *Objections to the Plaintiffs' Summary Judgment Evidence*

Together with its fifty-page "response" to Dallas County's motion for summary judgment, the plaintiffs filed an appendix consisting of almost 3,200 pages.  *See* Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix").  Dallas County has objected to many of the documents contained in the appendix, and the plaintiffs have not responded to the defendant's objections.

a. Judicial Notice of Documents from Other Litigation

The defendant objects to the plaintiff's request that the court take judicial notice of documents produced from a different lawsuit. *See* Defendant's Objections to Documents Contained in Appendix to Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Defendant's Objections") at 1-2 (objecting to Plaintiffs' Appendix at 0001-1228; 1281-2042; 2114-2162; 2243-2294). The Fifth Circuit addressed the propriety of taking judicial notice in *Taylor v. Charter Medical Corporation*, 162 F.3d 827, 829 (5th Cir. 1998), finding that Federal Rule of Evidence 201 allowed a court to take judicial notice of an "adjudicative fact" if the fact is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Additionally, the Fifth Circuit has determined that a court may take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings," but "cannot take notice of the factual findings of another court." *Id.* The court reasoned that such findings do not constitute facts "not subject to reasonable dispute" within the meaning of Rule 201 and that the doctrine of collateral estoppel would be superfluous if it were permissible for a court to take judicial notice of a fact merely because it was found to be true in some other action. *Id.* at 830 (citing *United States v. Jones*, 29 F.3d 1549, 1553-54 (11th Cir. 1994); *Liberty Mutual Investments Company*

*v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir. 1992); *Holloway v. A.L. Lockhart*, 813 F.2d 874, 878-79 (8th Cir. 1987)).  While *Taylor* held out the possibility that, in some rare circumstances, courts within the Fifth Circuit might be able to take notice of the factual findings of another court if they satisfied the indisputability requirement of Rule 201(b), the court explained that Rule 201 generally would not permit a court to take judicial notice of findings of fact from other proceedings because those facts are usually disputed and almost always disputable.  *Id.* at 830.

The plaintiffs ask the court to take judicial notice of more than 2,000 pages of documents -- consisting primarily of deposition transcripts, affidavits and medical records for individuals not involved in this litigation -- generated in other litigation. Clearly, the myriad of "facts" contained in these documents are neither generally known nor reasonably indisputable.  Indeed, information contained in deposition testimony and affidavits is at least as disputable as a court's factual findings.  Thus, the defendant correctly argues that the facts of which the plaintiffs ask this court to take judicial notice do not fall within the meaning of Rule 201.  Accordingly, the facts are not appropriate for proof by judicial notice, and this court will not take such notice of the voluminous materials requested by the plaintiffs.

b.   The Health Management Associates Report

The defendant objects to use of the Health Management Associates Report ("the report"), Plaintiffs' Appendix at 1229-1280, on several grounds.  First, the defendant argues that the report is irrelevant.  *See* Defendant's Objections at 3-4. Specifically, the defendant argues the report contains no specific facts relating to the suicide of Baines because it states only that Baines died as one of three suicides that year, a rate probably below that of the Texas Department of Corrections.  *Id.* Additionally, the defendant argues that the report is irrelevant for two reasons:  1) the investigation conducted in the report did not begin until almost a year and a half after Baines's death; and 2) the plaintiffs have not shown that the conditions during the intervening months between Baines's death and the report remained unchanged. *Id*. at 4.  See *e.g.*, *United States v. Gordon*, 634 F.2d 639, 644 (1st Cir. 1980) (holding that the trial court did not err when it precluded testimony relating to events that occurred two years after the matter at issues because it was irrelevant).  Although the court questions the relevance of the report to the plaintiffs' case, the report will be considered to the extent the court finds its contents relevant to determining the facts of the present case.[2]

---

[2]     The defendant makes several additional objections to the report, arguing that it contains hearsay, hearsay within hearsay, conclusory statements, speculation and improper opinion testimony.  Defendant's Objections at 4-5.  However, the defendant does not point to any specific statements within the lengthy report that are objectionable.  See *id.*  Accordingly, these objections do not comply with Federal Rule

(continued...)

c. U.S. Department of Justice Letter

The defendant next objects to a U.S. Department of Justice letter from Wan J. Kim, Assistant Attorney General, to Margaret Keliher, Presiding Officer of the Dallas County Commissioners Court. *See* Plaintiffs' Appendix at 3054-3100. The defendant objects that the letter is not relevant to the case because it was written nearly three years after Baines's death and the inspections mentioned within the letter occurred two and a half years after his death. Moreover, the defendant argues that the letter lacks relevance because only three of its forty-seven pages mention suicide preventions.

The court agrees with the defendant that the letter has little, if any, relevance. The letter does not address conditions in the Dallas County Jail when Baines was there; rather, the document cites Baines's death as an imprecise example of a suicide occurring in the jail. Although the court finds that the letter is, at best, tangentially relevant to this case, the court will allow the letter to the extent it is relevant to the issues presented herein. Therefore, the defendant's objections to the letter are overruled.[3]

---

[2](...continued)
of Evidence 103(a)(1), which requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken. See *Tucker v. SAS Institute, Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006).

[3]　　As with the report discussed *supra*, the defendant makes several additional objections to the letter. Dallas County argues the letter contains hearsay,

(continued...)

d.  The Affidavits of Experts Hayes and Thomas

The defendant also objects to the affidavits of Lindsay M. Hayes and David L. Thomas, M.D., J.D., two of the plaintiffs' experts.  *See* Plaintiff's Appendix at 3153-3193.  The defendant argues that the affidavits should not be considered because the opinions offered by the experts are not proper.  *See* Defendant's Objections at 7.

Expert witnesses may perform two roles:  (1) they may explain evidence to a fact finder, and (2) they may act as the source of evidence for a fact finder.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citing *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).  The standard in deciding whether an expert's opinion should be admitted is stated in Rule 702 -- whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Salas*, 980 F.2d at 305 (citing 3 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence ¶ 702[01] (1992)).  "Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."  *Air Crash at New Orleans*, 795 F.2d at 1233.

---

[3](...continued)
hearsay within hearsay, conclusory statements, speculation and improper opinion testimony.  Defendant's Objections at 6-7.  However, the defendant does not point to any specific statements within the lengthy letter that are objectionable.  See *id.* Accordingly, these objections do not comply with Federal Rule of Evidence 103(a)(1), which requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken.  See *Tucker*, 462 F. Supp. 2d at 722.

The affidavits at issue here offer little more than counsel could argue based on the known facts.[4]  Both affidavits are riddled with conclusory statements and conjecture.  Additionally, statements in the affidavits are often provided without reference to underlying facts.  Even so, because these statements are not being presented to a jury, the court will not strike the affidavits.  Rather, the court will consider the affidavits to the extent they comply with Rule 702.[5]

e.  Newspaper Articles

Lastly, the defendant objects to the newspaper articles included in the Plaintiff's Appendix.  *See* Plaintiff's Appendix at 2043-2113.  Newspaper articles are "classic, inadmissible hearsay" and are unusable to defeat summary judgment.  *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).  This general rule applies when the articles are offered to prove the truth of statements reported therein.  *Hicks v. Charles Pfizer & Company Inc.* 466 F. Supp. 2d 799 (E.D. Tex. 2005).  Newspaper

---

[4]     Generally, the affidavits contain only the experts' conclusions concerning counsel's factual and legal arguments.  *See, e.g.*, Plaintiff's Appendix at 3178-79 (averring that Dallas County had "clear knowledge" that there existed a "systematic lack of care" for prisoners).

[5]     The defendant repeats the same sort of vague objections regarding hearsay, conclusory statements and improper foundation for opinion testimony that it made regarding the report and the letter discussed *supra*.  *See* Defendant's Objections at 9-10.  As with the other documents, the defendant does not point to any specific statements within the affidavits that are objectionable.  *Id.*  Accordingly, these objections do not comply with Federal Rule of Evidence 103(a)(1), which requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken.  See *Tucker*, 462 F. Supp. 2d at 722.

articles "are not sworn or certified, and the authors are not subject to cross-examination, rendering such articles incompetent summary judgment evidence." *Id.* at 805.

Unless some exception to the general prohibition against hearsay set forth in the Federal Rules of Evidence applies, statements made in newspaper articles cannot be used as evidence to defeat a motion for summary judgment. The plaintiffs have included what appears to be a business records affidavit together with the newspaper articles in an apparent attempt to demonstrate admissibility. *See* Plaintiffs' Appendix at 2043. The affidavit states that the articles -- which the author refers to as "written records" -- were "kept in the regular course of business . . . for an employee and/or representative with personal knowledge of the information in the records." *Id.* (emphasis in original). However, newspaper articles are not records "kept in the course of a regularly conducted business activity" within the meaning of Rule 803(6). One of the primary reasons newspaper articles are considered unreliable in the first place is that the reporter is conveying information collected from other sources. Because their job function is to report news provided by others, reporters rarely have personal knowledge of the facts underlying their stories. The court will not assume, based on the blanket statement in a form affidavit sworn by someone other than the authors of the articles presented, that the reporters actually had personal knowledge of each and every fact reported in the articles. Moreover, news reporters often make

inferences and hypothesize in their articles; the inclusion of such speculation also makes the articles improper for evidentiary consideration.

The plaintiffs' presumptive contention that the articles are admissible under Federal Rule of Evidence 803(6) is meritless, and the court cannot identify another hearsay exception that would apply to the articles.  In *Dallas County v. Commercial Union Assurance Company*, 286 F.2d 388 (5th Cir. 1961), the Fifth Circuit found that a newspaper article was admissible even though it did not qualify under any hearsay exception.  In that case, the Fifth Circuit applied the residual hearsay exception now codified in Rule 807 and concluded that the article was admissible because it contained appropriate guarantees of trustworthiness.  *Id.* at 397-98.  However, in the case *sub judice*, the plaintiffs have not argued, and the court does not find, that such circumstantial guarantees of trustworthiness are present.  *See* FED. R. EVID. 807. Therefore, the newspaper articles are not competent summary judgment evidence, and they will not be considered by the court.

## C.  The Plaintiffs' Standing

The defendant alleges that the plaintiffs have failed to show that they have the capacity to sue on behalf of the estate of their deceased son.  *See* Defendant's Brief at 3.  The plaintiffs counter that they may sue on behalf of their son's estate in accordance with *Shepherd v. Ledford*, 962 S.W.2d 28, 33-34 (Tex. 1998).  Brief in

Support of Plaintiffs' Response to Dallas County's Motion for Summary Judgment

("Plaintiffs' Brief") at 17.

In *Shepherd*, the Texas Supreme Court found that the widow of a decedent had

standing to bring suit on behalf of his estate. *Id.* at 34. The court held that the

intestate husband's estate immediately vested in his widow at the time of his death in

accordance with the Texas Probate Code and that the widow had properly shown that

no administration of the estate was necessary. *Id.* at 33-34. Accordingly, as the sole

heir of her deceased husband, Mrs. Ledford had standing to sue on behalf of her

husband's estate. *Id.* at 34.

In the case before this court, Baines's estate immediately vested in the

plaintiffs in accordance with Texas law because they were his sole heirs.[6] *See*

Plaintiffs' Appendix at 3101, 3103. Likewise, the plaintiffs stated in their sworn

affidavits that no formal administration of Baines's estate was required and none is

pending. *Id.* Therefore, in accordance with the principles outlined by the Texas

Supreme Court in *Shepherd*, the court concludes that the plaintiffs have standing to

sue on behalf of Baines's estate.

---

[6]     The affidavits of Anderson and Brown contained in the plaintiffs'
appendix do not state whether Baines had a will. If Baines died intestate, the
plaintiffs are his lawful heirs in accordance with § 38(a)(2) of the Texas Probate Code
because Baines did not have a spouse or children. *See* Plaintiffs' Appendix at 3101,
3103. If Baines did have a will, the statements of the plaintiffs in their affidavits are
adequate to show that they are his rightful heirs. See *id.*

D.  The Plaintiffs' Claims

1.  *Denial of Medical Treatment*

The plaintiffs' first cause of action arises under 42 U.S.C. § 1983 and the

Eighth Amendment to the United States Constitution.  Section 1983 provides a

remedy for plaintiffs who have suffered a violation of their constitutional rights.  In

this case, the plaintiffs may recover under Section 1983 if they prove that an

individual acting under color of law deprived Baines of his Eighth Amendment right

not to be denied reasonable medical care.  *See* 42 U.S.C. § 1983.  In other words,

Section 1983 provides the mechanism by which the plaintiffs can recover if they

prove that their son's constitutional rights were violated.  See *Harrington v. Harris*,

118 F.3d 359, 365 (5th Cir.), *cert. denied*, 522 U.S. 1016 (1997).

The Eighth Amendment prohibits the government from responding with

deliberate indifference to the serious medical needs of prisoners.  See *Farmer v.

Brennan*, 511 U.S. 825, 834 (1994).  For an individual to act with deliberate

indifference, he must act with subjective recklessness.  *Id.* at 839-40.  Thus, before

liability may attach, a state actor must actually be aware of a serious medical risk

faced by a prisoner and choose to consciously disregard that risk by denying the

prisoner access to proper medical treatment.  *Lawson v. Dallas County*, 286 F.3d 257,

262 (5th Cir. 2002).  Subjective awareness of the medical need is required because

the Eighth Amendment protects only against wanton infliction of pain; negligent acts

or omissions are insufficient to create liability under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("an inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain'").

The denial of a prisoner's constitutional right to receive medical treatment can be challenged under two rubrics: (1) "jail condition" cases involve a challenge to "general conditions, practices, rules, or restrictions" incident to incarceration; and (2) "episodic acts or omissions" cases involve the acts or omissions of individual state actors and a determination of whether those acts or omissions constitute a violation of a constitutional duty. See *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 644-45 (5th Cir. 1996) (en banc). The plaintiffs contend that Dallas County violated their son's rights under either analysis. However, a review of the relevant case law reveals that the two rubrics are mutually exclusive because a different sort of intent is required to establish liability under the two inquiries. See *id.* at 645 ("the relationship between an official's episodic acts or omissions and a legitimate governmental objective begs the underlying question whether that official had the requisite mental state to establish his liability as a perpetrator of that particular act or omission, not as a dispenser of intended conditions or restrictions").

A violation may be found under the conditions of confinement theory only if jail and county officials knew the jail's conditions created a constitutional violation or if they intended to force Baines to endure such conditions. See *Ortega v. Rowe*, 796

F.2d 765, 768 (5th Cir. 1986), *cert. denied*, 481 U.S. 1013 (1987).  By contrast, the

episodic acts inquiry involves an analysis of the conduct of individuals, and liability

attaches if a state actor knowingly disregarded a serious risk of medical harm.  See

*Hare*, 74 F.3d at 645.

### a.  Conditions of Confinement

The plaintiffs posit that several conditions present at the jail at the time of

their son's death led to their son being denied access to needed psychiatric treatment.

The jail conditions the plaintiffs challenge are "inadequate funding, inadequate

staffing, inadequate monitoring of jail operations and acceptance by Dallas County

that it would continue to house inmates while routinely providing inadequate medical

care."  Plaintiffs' Brief at 6-7.  To succeed on their conditions of confinement claim,

the plaintiffs must show not only that these conditions existed, but also that they

were implemented or maintained by county officials with the intent of punishing

prisoners.  See *Ortega*, 796 F.2d at 768.  The plaintiffs have not provided summary

judgment evidence meeting this standard.

The plaintiffs aver that unconstitutional conditions existed in the jail for a

number of years before and after their son's death and that county officials received

reports discussing these violations.  *See* Plaintiffs' Response at 10-15.  However, the

plaintiffs provide no evidence that the county maintained those conditions for the

purpose of punishing prisoners.  Although a "long duration of a cruel prison condition

may make it easier to *establish* knowledge and hence some form of intent," the plaintiffs are still required to show punitive intent. *Wilson v. Seiter*, 501 U.S. 294, 300-01 (1991) (emphasis in original).

Here, the plaintiffs have shown the opposite; they have presented evidence showing that Dallas County had policies in place making the provision of psychiatric treatment to suicidal inmates a high priority. *See* Plaintiffs' Appendix at 2681-82 (explaining that the jail had procedures for handling inmates who expressed suicidal intent and that the medical staff would put a prisoner on suicide precautions quickly after learning he had expressed a suicidal intent). Indeed, the plaintiffs acknowledge "that there was no greater priority in the routine operation of the jail then [sic] to provide for the prompt treatment of a suicidal inmate who had not been yet placed on suicide prevention orders." Plaintiffs' Response at 26. The fact that such policies and procedures existed indicates that Dallas County lacked the punitive intent required to establish a violation of Baines's constitutional rights under the conditions of confinement rubric. See *Ortega*, 796 F.2d at 768.

In *Ortega*, the Fifth Circuit found that jail officials were unreasonable and negligent in their failure to regularly inspect jails. *Id.* Even so, the officials were not liable under Section 1983 because state actors attempted to take care of prisoners' needs by providing blankets and cleaning up cells. *Id.* Accordingly, the court found that "the record shows no evidence of officials' desire to punish the detainees." *Id.*

The same reasoning applies to the present case.  Even if the defendant were grossly

negligent in its decisions regarding the allocation of funds for the jail or in its alleged

failure to monitor jail operations more closely, that negligence does not translate into

punitive intent.  Therefore, the plaintiff has not established a Section 1983 claim

under the conditions of confinement analysis, and the defendant's motion for

summary judgment on this claim is granted.

### b.  Episodic Acts or Omissions

The plaintiffs also contend that Dallas County is liable under the episodic acts

or omissions rubric.  To survive summary judgment under this standard, the plaintiffs

must provide evidence that one or more jail employees (1) were consciously aware of

a serious risk of medical harm and (2) chose to disregard that risk by denying Baines

access to medical treatment.  See *Hare*, 74 F.3d at 648.  Taking the facts of the case

in the light most favorable to the plaintiffs, the court may assume that every relevant

state actor knew that Baines was suicidal at least three hours before his death.  *See*

Plaintiffs' Response at 25-26, 27.  However, that does not necessarily mean that each

of these actors knew Baines faced a serious risk of medical harm.  If Baines had been

placed on suicide precautions, then the plaintiffs admit that he would not have faced

a serious risk of injury.  *See* Plaintiffs' Response at 26 ("If a suicide order had been in

place, the clothing and item [sic] would would've [sic] been removed, Kendrick

[Baines] would have been clothed in a paper drape that would be extremely unlikely

to be used as a deadly ligature."). Therefore, only state actors who knew Baines was

suicidal *and* knew that he was not placed on suicide precautions were aware that

Baines faced a serious risk of harm.

The plaintiffs contend that the DSOs and physician's assistants all knew that

Baines was not on suicide precautions prior to his death. *Id.* at 26, 28. The

defendant disputes this contention, arguing that only the DSOs knew that Baines had

not been placed on suicide precautions and that the physician's assistants, Judd and

Cotten, did not have that knowledge. *See* Defendant Dallas County's Brief in

Support of Motion for Summary Judgment ("Defendant's Brief") at 7. The plaintiffs

respond that Cotten admitted in his affidavit that he knew Baines was not on suicide

precautions and that Judd should have been similarly aware. *See* Plaintiffs' Response

at 28. However, Cotten's affidavit says nothing of the sort. *See* Appendix to

Defendant's Motion for Summary Judgment (Defendant's Appendix") at 168.

Instead, Cotten states that Baines's chart included a transfer order stating that Baines

"expressed suicidal intent" instead of the "standard 'suicidal precautions'" form. *Id.*

The plaintiffs have presented no evidence that the standard form must be filled

out before a prisoner is placed on suicide precautions, and the context of Cotten's

statement indicates he believed the transfer order was a substitute for the standard

form in Baines's case. See *id.* In his affidavit, Cotten states, "This form was however

not the standard 'suicidal precautions' form, but did explicitly state that the patient

expressed suicidal intent." *Id.*  Cotten's use of the phrase "but did explicitly state" indicates the transfer order contained similar information to that which is included in the standard suicide precautions form.  Examining this statement in the context provided by the plaintiffs' other evidence -- "that there was no greater priority in the routine operation of the jail then [sic] to provide for the prompt treatment of a suicidal inmate who had not been yet placed on suicide prevention orders," Plaintiffs' Response at 26 -- the court cannot, as the plaintiffs suggest, read the statement to indicate that Cotten knew Baines had not been placed on suicide precautions.

Because the plaintiffs have provided no summary judgment evidence showing that Judd or Cotten knew that Baines had not been placed on suicide precautions, the court cannot find that Judd and Cotten realized Baines faced a serious risk of harm. Therefore, Judd and Cotten could not have violated Baines's constitutional rights under the episodic acts or omissions inquiry.

Even if it is assumed that Judd and Cotten, like the DSOs, knew that Baines had not been placed on suicide precautions, none of the relevant state actors treated Baines's need for medical attention with deliberate indifference.  The plaintiffs cite evidence that DSO Strange asked Judd to see Baines on two occasions before Baines committed suicide.  Plaintiffs' Response at 27.  Similarly, they provide evidence that DSO Terry checked on Baines at five-minute intervals during at least part of his shift.

*Id.* It is, therefore, clear that the DSOs were attending to Baines and attempting to obtain medical care for him.

Similarly, the physician's assistants, Judd and Cotten, were not deliberately indifferent to the risk Baines faced. Judd testified in her deposition that if she had known Baines was suicidal but was not on suicide precautions she would have tried to assess him as soon as possible. *See* Defendant's Appendix at 259. In addition, the evidence shows that Judd and Cotten tried to obtain an officer escort to see Baines and two other suicidal inmates on three occasions earlier in the day that Baines committed suicide. *See* Defendant's Appendix at 167. Unfortunately, no officer was available, and Judd and Cotten decided not to visit the prisoners without an escort. *Id.* While this decision to not visit Baines without an officer escort may have been negligent or even grossly negligent, it does not rise to the level of deliberate indifference because there is no evidence that Judd and Cotten intended to cause Baines harm by not visiting him. See *Hare*, 74 F.3d at 649 ("'Deliberate indifference, *i.e.*, the subjective intent to cause harm, cannot be inferred from a prison guard's failure to act reasonably. If it could, the standard applied would be more akin to negligence than deliberate indifference.'").

Although the circumstances of this case are tragic and some, if not all, of the state actors appear to have been negligent in failing to obtain medical care for Baines more quickly, their conduct does not implicate the protections of the Eighth

Amendment under the episodic acts or omissions rubric.  While better communication and cooperation might have prevented Baines from committing suicide, the subjective intent required for deliberate indifference cannot be inferred from the absence of communication and cooperation.  See *Ortega*, 796 F.2d at 768-69 ("The facts of this case, however, show no more than a sloppy system of cooperation between federal and local authorities.  Blindly assuming away one's responsibilities without first discovering others' expectations can be seen as unreasonable--nothing more.").  Accordingly, the defendant's motion for summary judgment on the plaintiffs' Section 1983 claim under the episodic acts and omissions rubric is also granted.

### 2.  *The ADA and RA Claims*

The plaintiffs next cause of action is based upon the ADA and the RA.  The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.A. § 12132.  Similarly, the RA is designed to prevent an individual with a disability from being excluded from or denied the benefits of programs and activities that receive federal funding solely because of the individual's disability.  *See* 29 U.S.C. § 794.

The plaintiffs base their claim under these two statutes on allegations that Dallas County denied Baines medical treatment due to a mental disability by (1) "providing medical services to detainees in a manner that discriminates against mentally disabled detainees," and (2) "denying mentally ill detainees services that are provided to detainees who are not mentally ill that would have kept them from harm." Plaintiff's Complaint at 11. The defendant contends that "there is no evidence that Baines was excluded from participating in some benefit at the Jail and that such exclusion was due to discrimination on account of a disability." Defendant's Brief at 16. Though the plaintiffs filed almost seventy pages of argument and briefing in response to the defendant's motion for summary judgment, they failed to respond to the request for summary judgment regarding their cause of action under the ADA and the RA.

The court is unable to identify any benefit or service that was denied to Baines on the basis of his disability, nor does it see evidence to support the allegations contained in the plaintiffs' complaint regarding those claims. The plaintiffs have offered no evidence that Dallas County denied any medical service to mentally ill prisoners in general, or to Baines specifically, while providing treatment to those prisoners who were not mentally ill. Thus, the defendant's motion for summary judgment with respect to the plaintiffs' cause of action under the ADA and the RA is granted.

### 3.  *The Texas Tort Claims Act Claim*

The plaintiffs' final claim is that "Dallas County, by and through its employees, was negligent in the use of jail clothing and the jail cell itself."  Plaintiffs' Complaint at 12.  The TTCA, in relevant part, provides governmental liability for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."  Texas Civil Practice & Remedies Code § 101.021.  To avoid summary judgment on this claim, the plaintiffs must show that the TTCA's waiver of sovereign immunity applies to this case.

The Texas Supreme Court has held that liability for the use of real or personal property can attach to a governmental entity only "when the governmental unit is itself the user." *San Antonio State Hospital v. Cowan*, 128 S.W.3d 244, 245-46 (Tex. 2004).  Therefore, Dallas County's sovereign immunity may only be waived by its own use of jail clothing and the jail cell, not by Baines's use of those items.  See *id.* "A governmental unit does not 'use' personal property by merely allowing someone else to use it." *Cowan*, 128 S.W.3d at 246.  The same can be said for real property.

Because Dallas County did not "use" jail clothing or the jail cell as that term has been defined by the Texas Supreme Court, the TTCA's waiver of sovereign immunity does not apply.  The defendant's motion for summary judgment on the plaintiffs' TTCA claim is therefore granted.

- 27 -

### III.  CONCLUSION

For the reasons stated above, the defendant's objections to the plaintiffs' summary judgment evidence are **SUSTAINED** in part and **OVERRULED** in part, and its motion for summary judgment is **GRANTED**.  Judgment will be entered that the plaintiffs take nothing from Dallas County on their claims in this case.

**SO ORDERED**.

April 18, 2007.

_____
A. JOE FISH
CHIEF JUDGE